IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LONNIE F.[1]**,

      **Plaintiff,**

v.

      Civil Action 2:23-cv-890
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Lonnie F., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 8). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff filed his application for benefits on March 12, 2019, alleging that he has been disabled since August 22, 2017, due to partial epilepsy with impairment of consciousness, dyspnea on exertion, drug induced tremors, essential tremors, and arthritis. (R. at 162-68, 222.)

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Plaintiff's application was denied initially in May 2019 and upon reconsideration in August 2019[2]. (R. at 77-111.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 112.) Administrative law judge Irma J. Flottman (the "ALJ") held a telephone hearing on August 5, 2021, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 32-51.) A vocational expert ("VE") also appeared and testified. (*Id.*) On September 9, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-31.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On September 9, 2021, the ALJ issued her decision. (R. at 9-31.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act at all times relevant to

---

[2] The ALJ's reference to reconsideration in June 2019 appears to be a typo. The correct month is August 2019.

the decision. (R. at 15.) Then, at step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has engaged in substantial gainful activity since August 22, 2017, the amended alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: partial complex seizure disorder/epilepsy; osteoarthritis losteochondral lesion/defect, right knee; and obesity. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no climbing ladders, ropes, and scaffolds; frequent climbing of ramps and stairs; frequent kneeling, crouching, crawling; avoid all exposure to hazards including use of moving machinery, no exposure to unprotected heights, and no commercial driving.

(R. at 19-20.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Relying on the VE's testimony, the ALJ concluded at step four of the sequential process, that Plaintiff is unable to perform any past relevant work. (R. at 26.) At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he can perform such as a stocker/bagger, hand packager, or assembler. (R. at 26-27.) She therefore concluded that Plaintiff has not been under a disability since August 22, 2017. (R. at 27.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.   ANALYSIS

Plaintiff raises one statement of error with three subparts: (1) the ALJ relied upon an insufficient record resulting in the ALJ's interpretation of raw medical data; (2) the ALJ failed to supplement the record; and (3) the ALJ failed to account for the combined effects of Plaintiff's severe and non-severe impairments. Although not particularly well-developed, the focus of Plaintiff's statement of error appears to be the ALJ's rejection of essential tremors as a severe impairment at Step 2 and the omission in the RFC of any manipulative or exertional limitations resulting from the tremors. The Court finds no merit to Plaintiff's arguments and concludes that the ALJ's decision relating to Plaintiff's physical impairments, is supported by substantial evidence. [4]

Initially, Plaintiff's argument that the ALJ interpreted "raw medical data" does not require much discussion. Despite making this assertion, Plaintiff never defines "raw medical

---

[4]Plaintiff is not challenging the ALJ's evaluation of his mental impairments.

data" nor identifies the specific "raw medical data" on which the ALJ supposedly improperly relied. At most, he refers to the ALJ's summary of "a portion of the treatment notes relating to Plaintiff's right knee …." (ECF No. 9 at 12.) In reply, he cites to various treatment records dated between August 20, 2019 and June 23, 2021.

Certainly, Plaintiff is correct that ALJs are generally unqualified to interpret "raw medical data" and make medical judgments concerning reasonable limitations. "Raw medical data," however, generally includes testing such as x-rays, *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 727 (6th Cir. 2013), MRI images, *Holland v. Comm'r of Soc. Sec.,* No. 4:13-CV-10295, 2014 WL 1118521, at *7 (E.D. Mich. Mar. 20, 2014) or an EMG, *Kidder v. Comm'r of Soc. Sec.,* No. 1:18-CV-661, 2020 WL 1080413, at *5 (S.D. Ohio Mar. 6, 2020), *report and recommendation adopted,* No. 1:18-CV-661, 2020 WL 5201080 (S.D. Ohio Sept. 1, 2020). Treatment notes or reports from medical professionals following various testing, on the other hand, are not considered raw medical data beyond the ALJ's expertise. *Robert D. v. Comm'r of Soc. Sec.,* No. 3:23-CV-001, 2023 WL 4348871, at *6 (S.D. Ohio July 5, 2023), *report and recommendation adopted sub nom. Robert D. v. Comm'r of Soc. Sec. Admin.,* No. 3:23-CV-1, 2023 WL 5002369 (S.D. Ohio Aug. 4, 2023) (doctors' reports from physical examinations are not raw medical data); *Evans v. Comm'r of Soc. Sec.,* No. 1:18-CV-632, 2019 WL 3927507, at *9 (S.D. Ohio Aug. 20, 2019), *report and recommendation adopted*, No. 1:18-CV-632, 2019 WL 4738120 (S.D. Ohio Sept. 28, 2019) (doctors' reports about a patient's subjective complaints and objective condition are not raw medical data when those reports are in plain language). The medical reports cited by Plaintiff are not "raw medical data."

Indeed, Social Security regulations "require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." *Winans v. Comm'r of Soc. Sec.,* No. 5:22-CV-01793, 2023 WL 7622634, at *5–6 (N.D. Ohio Nov. 15, 2023). Stated another way, "[f]ar from prohibiting ALJs from directly evaluating medical evidence, the law requires it." *Id.* As a result, an ALJ does not improperly "interpret raw medical data" simply by evaluating the medical evidence without the benefit of a medical opinion. *Id.* Here, consistent with her obligation, the ALJ reviewed the reports from medical professionals following Plaintiff's various examinations. *Id.* (*See* R. at 21-23.) Accordingly, there is no merit to Plaintiff's argument that the ALJ exceeded her charge by interpreting raw medical data.

Similarly, to the extent that Plaintiff may be claiming that the ALJ should have found his essential tremors to be a severe impairment at Step Two, that argument is wholly undeveloped. Moreover, consistent with her duty, the ALJ properly considered Plaintiff's tremors in assessing the RFC, noting their improvement with medication changes and Plaintiff's testimony regarding intact manipulative abilities other than tying his shoes. (R. at 25.) Based on her consideration and explanation, the ALJ appropriately did not include any manipulative limitations in the RFC.

Plaintiff's primary argument appears to be his sufficiency of the evidence argument, which, although not specifically presented as such, is essentially an argument based on *Deskin v. Commissioner of Social Security*, 605 F.Supp. 2d 908 (N.D. Ohio 2008). There are several problems with this argument as it relates to Plaintiff's physical impairments at issue here.

First, in part, this argument relies on Plaintiff's claim that the need for a consultative examination relating to his physical impairments was well recognized, including by the State

agency analyst. To be clear, this claim is based solely on Plaintiff's interpretation of the record. The Commissioner argues, to the contrary, that the recognized need for a consultative examination pertains only to Plaintiff's mental impairments. This view is reasonable based on a fair reading of the record. (R. at 94.) For example, Plaintiff had many record sources relating to his physical impairments but none relating to his mental impairments. Further, the matter of a consultative examination did not come up until raised by Plaintiff following the denial of his claim at the initial level. Then, the reconsideration findings, which considered Plaintiff's "depressive, bipolar and related disorders" were not made until after the Plaintiff's consultative examination with James Tanley, Ph.D. (R. at 96, 98.) Thus, the Court finds no merit to Plaintiff's argument that the need for a consultative examination relating to Plaintiff's physical impairments was so well-recognized that the ALJ erred by not ordering one.

Turning more specifically to *Deskin*, as this Court previously has recognized, "*Deskin* potentially applies in only two circumstances." *Robert D.,* 2023 WL 4348871, at *5 (citing *Kizys*; *Raber v. Comm'r of Soc. Sec.*, No. 4:12-cv-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (explaining post- *Deskin* application of the rule)). "First, *Deskin* matters where an ALJ made an RFC determination based on no medical source opinion. Second, *Deskin* applies where an ALJ made an RFC based on an 'outdated' medical source opinion 'that does not include consideration of a critical body of objective medical evidence.'" *Id.* (quoting *Kizys*, 2011 WL 5024866, at *2). Plaintiff seems to suggest that both circumstances apply here.

Assuming this is so, even when a case falls within *Deskin*, remand is not automatic. *Robert D.,* 2023 WL 4348871, at *5. Rather, the "'key inquiry' when deciding whether to

remand under *Deskin*, is whether the ALJ 'fully and fairly developed the record through a conscientious probing of all relevant facts.'" *Id*. (quoting *Bryant v. Comm'r of Soc. Sec.*, No. 3:15-CV-354, 2017 WL 489746, at *3–5 (S.D. Ohio Feb. 7, 2017) (quotation marks and citation omitted), *report and recommendation adopted sub nom. Bryant v. Berryhill*, No. 3:15-CV-354, 2017 WL 713564 (S.D. Ohio Feb. 22, 2017)). "[T]he language of the regulations and Sixth Circuit authority, … make clear that the burden to prove his case rests on the claimant, not the ALJ." *Jones,* 2024 WL 22081, at *19 (citing *Moats v. Comm'r of Soc. Sec.,* 42 F.4th 558, 563 (6th Cir. 2022), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785, 215 L. Ed. 2d 52 (2023); 20 C.F.R. § 404.1512(a)). "Further, 'the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so *if the existing medical sources do not contain sufficient evidence to make a determination*.'" *Id*. (quoting *Landsaw v. Sec'y of Health & Hum. Servs*., 803 F.2d 211, 214 (6th Cir. 1986) (emphasis added in *Jones*) (citing 20 C.F.R. § 416.917(a)); *see also Winans*, 2023 WL 7622634, at *3–4 nn. 39–40, 42–43, 50 (citing *Landsaw*)). Importantly, although "the ALJ has a duty to conduct a 'full inquiry,' that duty 'does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.'" *Id*. (quoting *Landsaw*, 803 F.2d at 214) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)); *see also* 20 C.F.R. § 416.919a(b)(1) (an ALJ may be required to obtain a consultative exam when "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources")).

In her decision, the ALJ discussed, at some length, Plaintiff's medical history relating to his physical impairments, including his tremors. (R. at 20-23.) For example, the ALJ noted that Plaintiff was seen on August 28, 2018, at which time his tremors were found to be mild and Plaintiff was not interested in a trial of medication. (R. at 16 citing R. at 411.) She further noted that Plaintiff "did not seek any additional treatment until 5/26/21, where he admitted to tremors affecting his left side for more than 25 years." (R. at 16; *see also* R. at 622.) The ALJ then observed that this revealed "that the claimant has been able to work with these tremors in the past." The ALJ further noted that, at the May 2021 appointment, Plaintiff reported that he had "tried medications three years ago without benefit," again "suggesting more tolerable symptomology than alleged in disability reports." (*Id.*) Additionally, the ALJ cited Plaintiff's hearing testimony that his medication helped his tremors about 30% of the time and that he could handle manipulative tasks with some difficulty tying his shoes or trimming his toenails. (R. at 21; *see also* R. at 42-43.)

Ultimately, the ALJ summarized her findings regarding Plaintiff's physical impairments in this way:

> The overall record supports the claimant's ability to work at the medium exertional level, which was reduced from a higher exertional level considering the claimant's knee impairment combined with his claimant's impairments. Consideration was made of his subjective complaints such that climbing restrictions were provided. Although his right knee pain is largely controlled, it was considered in reducing him to the medium exertional level, including the climbing limits and the postural limits. The exacerbating effect of his low level obesity was also considered as an aggravating factor, particularly with regard to his right knee impairment. The claimant does have body mass indexes in the low obesity range and this impairment has been considered with regard to his other impairments as an aggravating factor with body mass indexes actually dropping in the most recent notes (017). There is a report that the claimant planned to join a gym followed by reports of working out

> when seeking right knee treatment (C3F/10-12, C3F/6-9). His body mass index on 2/27/19 was 32.41 kg/m2 compared to 30.74 kg/m2 on 6/23/21 (C8F/6) and remained in the low obesity range at worst with an intact gait throughout the record. Finally, he must avoid all exposure to hazards including no use of moving machinery, no exposure to unprotected heights, and no commercial driving, in consideration of his seizure disorder/epilepsy and associated symptoms including auras and headaches to the extent the providers' notes and findings support them.
>
> The State agency medical consultants reviewed the record (C4A (5/20/2019), C6A 8/27/19). They cited new and material evidence regarding the claimant's impairments that supports a change in the claimant's functioning and warrants a departure from the prior Administrative Law Judge's findings. Their opinions on this issue is persuasive with hearing level evidence also supporting new and material evidence of a change in the claimant's functioning consistent with the need for greater limitation than found by the prior Administrative Law Judge. They also found no meeting or equaling of any listing. Finally, they assessed the claimant as capable of work within the same restrictions found in this decision and supported their assessments with evidence as of the dates of their assessments. Their opinions remain supported even with consideration of hearing level evidence and the claimant's testimony. Their opinions are persuasive as consistent with the claimant's actual reports to providers, his conservative treatment history, improvement admitted by the claimant and found by treating providers beyond that reported in disability reports, and the claimant's activities of daily living including self- employment work not in the record followed by regular part-time work not that far from substantial gainful activity levels, his household chores and yardwork, and even driving (against orders). While the claimant has no reported work earnings in 2018, he did report that he was working and self-employed (C2F172, 45, 5/23/ 18).

(R. at 23-24.)

The Court is satisfied that the ALJ fairly developed the record by probing the relevant facts. Plaintiff does not contend that the ALJ inaccurately portrayed the medical evidence. Given the bare bones nature of his argument, Plaintiff has not shown why the record was insufficient for the ALJ to make a disability determination without additional medical opinion evidence. Significantly, the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an

opinion consistent with that of the ALJ." *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 Fed. Appx. 395, 401 (6th Cir. 2018). Indeed, "'[t]he Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined an RFC based on objective medical evidence and non-medical evidence.'" *Horne v. Comm'r of Soc. Sec.,* No. 1:22-CV-00892-BYP, 2023 WL 4078334, at *8 (N.D. Ohio Apr. 27, 2023), *report and recommendation adopted sub nom. Horne v. Comm'r of Soc. Sec. Admin.,* No. 1:22CV892, 2023 WL 6304522 (N.D. Ohio Sept. 28, 2023) (quoting *Borawski v. Comm'r of Soc. Sec.,* No. 1:20-CV-01091-JDG, 2021 WL 811717, at *18 (N.D. Ohio Mar. 3, 2021). All that is required is that the ALJ make a connection between the evidence relied on and the conclusion reached. The ALJ made that connection here with respect to Plaintiff's physical impairments, including Plaintiff's tremors.

Moreover, the language of the regulations and Sixth Circuit authority, make clear that the burden to prove his case lies with Plaintiff, not the ALJ. *Fox v. Comm'r of Soc. Sec.,* No. 5:23-CV-580, 2023 WL 7018362, at *9 (N.D. Ohio Oct. 10, 2023), *report and recommendation adopted*, No. 5:23 CV 580, 2023 WL 7222824 (N.D. Ohio Nov. 2, 2023). That is, while an ALJ must ensure that a claimant receives a "full and fair hearing," the ultimate burden of proving entitlement to benefits lies with the claimant. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Although social security proceedings are inquisitorial rather than adversarial, that does not mean that the ALJ advocates for the claimant. *Id.* ("Promoting the claimant's case, of course, is not the ALJ's obligation. The ALJ, remember, is a neutral factfinder, not an advocate."). It is only under "extreme circumstances" that the ALJ could be said to have a

"special duty" to help develop the record. *Id.* at 563-64 (discussing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Such circumstances may include when "a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Id.* at 564. Here, Plaintiff was represented by counsel and cannot shown that his case was an "extreme" situation in which the ALJ had a heightened duty to develop the record. Indeed, the whole of Plaintiff's argument here can fairly be characterized as an attempt to shift the burden of proof regarding his claim of disability.

To be sure, his efforts do not end there. That is, Plaintiff also suggests that the ALJ erred in failing to explain why the request made by counsel at the hearing for a consultative examination was denied. (ECF No. 9 at 15.) The Court, however, finds that the ALJ did not need to explain her procedural decision not to order a consultative examination. The Social Security regulations describe when the ALJ must give an explanation. *Winans v. Comm'r of Soc. Sec.*, No. 5:22-CV-01793, 2023 WL 7622634, at *6 (N.D. Ohio Nov. 15, 2023). Unlike the medical opinion regulations, the consultative examination regulations do not require an explanation. *Id.* And, courts are "generally not free to impose [additional procedural rights] if the agencies have not chosen to grant them." *Id.* Plaintiff's contention that the ALJ further erred by failing to request a treating source opinion cannot succeed for the same reason. Not only that, but this argument also relies on an inaccurate portrayal of the record. An assessment of Plaintiff's work-related functional limitations was requested from Scott Foster, M.D. of Avita Ontario Orthopedics. (R. at 283.) Apparently, however, Dr. Foster opted not to provide one.

Plaintiff also takes aim at the ALJ's consideration of evidence that Plaintiff was engaged in regular part-time work and also self-employed. Under the SSA's rules, it was appropriate for the ALJ to consider Plaintiff's working in her decision. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("ALJ did not err by considering [the claimant's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled."); 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Plaintiff also argues that the ALJ failed to consider that his work had been performed with special circumstances and accommodations. But, "an activity may still be inconsistent with alleged symptoms even if the claimant alleges it was performed in a limited or accommodated manner." *Bullard v. Kijakazi*, No. 3:21-CV-254-JEM, 2022 WL 4126002, at *11 (E.D. Tenn. Sept. 9, 2022) (citing *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020)). Moreover, as the ALJ specifically discussed, the accommodations extended to Plaintiff were "not a part of treatment for his impairments per se …." (R. at 24.) And, as to Plaintiff's tremors specifically, the ALJ noted that, while the tremors were cited "as giving [Plaintiff] trouble writing and working on cleaning equipment," "his tremors improved with medication changes, [Plaintiff] was not interested in trying new medications and describes his tremors mild." (R. at 25.) Further, the ALJ cited "detailed findings and testing regarding [Plaintiff's] tremors" as confirming "only mild tremors, …. 30% improved … with treatment and intact manipulative abilities other than tying shoes." (*Id.*)

Plaintiff's final argument relies on the testimony of the Vocational Expert. Plaintiff cites speculative limitations he believes should have been considered in the RFC. In doing so, he cites evidence in the record that he believes demonstrate that manipulative limitations relating to his tremors should have been included in the RFC. Plaintiff's efforts are to no avail. Although Plaintiff may disagree with the ALJ's decision, he has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley*, 581 F.3d at 406. Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Indeed, the Sixth Circuit upholds an ALJ's decision even where substantial evidence both contradicts and supports the decision. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). As discussed, the ALJ's RFC formulation is substantially supported. Accordingly, Plaintiff's arguments citing limitations beyond those included in the RFC is without merit.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 9) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

IT IS SO ORDERED.

Date: <u>July 23, 2024</u>             /s/ *Elizabeth A. Preston Deavers*
                            **ELIZABETH A. PRESTON DEAVERS**
                            **UNITED STATES MAGISTRATE JUDGE**